**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000441
28-MAR-2019
08:26 AM**

NO. CAAP-17-0000441

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CASSIE L. SHIGETANI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 14-1-1301)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Cassie L. Shigetani (Shigetani) appeals from the Judgment of Conviction and Probation Sentence, filed April 27, 2017, (Judgment) in the Circuit Court of the First Circuit (circuit court).[1]

Plaintiff-Appellee State of Hawai'i (State) charged Shigetani with Count 1, Theft in the Second Degree, under Hawaii Revised Statutes (HRS) § 708-831(1)(b) (2014); Count 2, Unauthorized Possession of Confidential Personal Information, under HRS § 708-839.55 (2014); and Count 3, Credit Card Theft, under HRS § 708-8102(1) (2014). On February 10, 2017, after a jury trial, the circuit court found Shigetani guilty in Count 1 of the included offense of Theft in the Fourth Degree, under HRS § 708-833 (2014), and guilty as charged in Counts 2 and 3. At

---

[1] The Honorable Shirley M. Kawamura presided.

the sentencing hearing on April 27, 2017, the circuit court sentenced Shigetani to six months probation for Count 1 and four years probation for Counts 2 and 3, subject to special conditions.

On appeal, Shigetani contends: (1) the State's closing arguments included appeals to emotion and an attempt to shift the burden of proof to the defense, prejudicing Shigetani's right to a fair trial; (2) the circuit court plainly erred when it failed to strike the improper statements made during cross-examination by the complaining witness (Wayne Rooney) (Rooney), failed to question the State as to the subject of the statements made by Rooney to the State as he left the courtroom, and failed to question the jury to determine if they had heard Rooney's statements; (3) there was no substantial evidence to support Shigetani's convictions in Counts 2 and 3; and (4) that if any of these errors were not preserved for appeal due to a failure to object that the defense counsel did not provide effective assistance of counsel.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Shigetani's points of error as follows:

(1) Shigetani's first point of error contends that the State's use of certain language during its closing argument constituted misconduct which prejudiced Shigetani's right to a fair trial and must be remedied by remand for a new trial. Specifically, Shigetani contends that the State improperly appealed to the juror's emotions by emphasizing that Rooney was "homeless" and "down on his luck" and that Shigetani had "picked a person who's vulnerable." Shigetani also contends that during closing arguments the State committed misconduct by improperly shifting the burden of proof to the defense to prove "why Wayne Rooney would want to set this lady up." We reject both of these contentions.

In reviewing this issue,

2

> [a]llegations of prosecutorial misconduct are reviewed under
> the harmless beyond a reasonable doubt standard, which
> requires an examination of the record and a determination of
> whether there is a reasonable possibility that the error
> complained of might have contributed to the conviction.
> Where a defendant fails to object to a prosecutor's
> statement during closing argument, appellate review is
> limited to a determination of whether the prosecutor's
> alleged misconduct amounted to plain error.

State v. Iuli, 101 Hawai'i 196, 204, 65 P.3d 143, 151 (2003)
(citations omitted). In this case, Shigetani's counsel did not
object to the State's remarks during closing arguments, so our
review is limited to determining whether the alleged misconduct
constituted plain error that affected Shigetani's substantial
rights. Id. at 208, 65 P.3d at 155 (citing State v. Ganal, 81
Hawai'i 358, 376, 917 P.2d 370, 388 (1996)). In evaluating the
State's remarks for plain error, we consider "the nature of the
alleged misconduct, the promptness or lack of a curative
instruction, and the strength or weakness of the evidence against
the defendant." Id. (quoting Ganal, 81 Hawai'i at 374, 917 P.2d
at 386).

Regarding the nature of the alleged misconduct during
closing argument, the Hawai'i Supreme Court has stated that:

> a prosecutor is permitted to draw reasonable inferences from
> the evidence and wide latitude is allowed in discussing the
> evidence. It is also within the bounds of legitimate
> argument for prosecutors to state, discuss, and comment on
> the evidence as well as to draw all reasonable inferences
> from the evidence. In other words, closing argument affords
> the prosecution (as well as the defense) the opportunity to
> persuade the jury that its theory of the case is valid,
> based upon the evidence adduced and all reasonable
> inferences that can be drawn therefrom.

State v. Rogan, 91 Hawai'i 405, 412-13, 984 P.2d 1231, 1238-39
(1999) (citations and internal quotation marks omitted).

Here, the State began closing argument with the
following characterization of the facts:

> In hindsight it's easy to see what she did. *She
> picked a person who's vulnerable.* You know, he said he was
> not as *down on his luck* when he comes to Hawaii. But, you
> know, he at that time didn't have a job and he didn't have a
> house. And if you look at the State's exhibits, he had EBT
> cards. He was a vulnerable person.
>
> She offered him exactly what he needed, a place to
> stay. She appeared harmless. She even looked a little bit

weak. He said, you know, they walked to McDonald's and apparently though sometimes she looked differently than at other times.

You can see that she puts on one appearance when she first sees the police officers and something else when they eventually make it clear that she is in fact in trouble. You can see sometimes she does have a wheelchair in that living room, but at the time it looks like it's folded up. Again appearances can be deceiving.

She only took a few things. She didn't bother with his luggage. She kept it simple. And then when she was caught, she avoided confrontation. Didn't speak to him face to face. Didn't speak to him personally. He stayed out in the living room waiting for the police. She locked her door.

Finally she gave a little to get a lot because when the police arrived and they said, you know, Come on, Cassie, she gave them some things. Right? She gave them the cigarettes because she doesn't care about the cigarettes. The keys, you know. She can't use the keys at that point. The police are there. The money clip and even the wallet hid underneath that towel.

You'll notice throughout the house there are towels on various surfaces, on the chairs, and on the bed. She's betting nobody's gonna lift up that towel. She gave the police what she didn't care about so much because she got what she wanted. She got the $1,900. She got the number on the bank card and she got the Social Security number and any other driver's license numbers, health numbers, whatever that she wanted.

After that she's just gonna let human nature do the rest because what we got in this case, we have -- you know how cats and dogs fight, you know how oil and water don't mix, we have a criminal defense attorney who's *homeless*, *down on his luck*, versus police officers. Who does she think the police are going to believe?

(Emphasis added).

The contested statements appear to be based directly on the following exchanges during the State's direct examination of Rooney:

[State:] Okay. Where do you live now?
[Rooney:] Uh, at the homeless shelter.
[State:] When you came back to Hawaii, what was your plan going to be?
[Rooney:] Uh, I was considering reopening my law practice.
[State:] You know, you're a little down on your luck. At that time though you could afford to fly back?
[Rooney:] Well, I had money at that time.

. . . .

[State:] Did you eventually rent a room from her?
[Rooney:] Yes, I did.
[State:] How did that come about?

[Rooney:] Uh, I was telling her that I was looking for a room and I had nothing permanent or whatever, and she said she had a room in her condo, apartment, whatever you want to call it, and she'd be willing to rent it to me.

. . . .

[State:] And again at that time you weren't quite as down on your luck?
[Rooney:] Correct.

. . . .

[Defense Counsel:] And prior to meeting Ms. Shigetani, you said that you didn't have a place to stay?
[Rooney:] Uh, when I met her, I did not have a place, a permanent place to stay.

The statements also mirror language found in Shigetani's own opening and closing argument. Shigetani's opening statement included the following descriptions of Rooney:

Um, at that time, you know, he was -- like the State said, *he was down on his luck*. He had no money. He did however have a background in law. In particular he was a prior criminal defense attorney who was not practicing anymore at the time. So he has a little bit of background in the area specifically of criminal law and specifically in this state.

. . . .

So I mean this was a pretty -- something that was emphasized to [Rooney]. I mean -- and it concerned her. And again *[Rooney] had no money*. In fact he had to take out a promissory note from [Shigetani] in the amount of $260. He took a promissory note out from [Shigetani]. They did come to an agreement regarding rent. He agreed to pay $850 and that was for about -- a month for six months.

(Emphasis added).
Shigetani's closing argument further stated, in regards to Rooney:

It describes him -- well, *one word describes him and it's "desperation." He's homeless*. He needs a place to stay. He needs money. He's desperate to get both of them. That was his motive once the police were called. And it appears it was still his motive two years after the incident took place.

(Emphasis added).

Upon review of the State's reference to Rooney as "homeless" and "down on his luck" and to the fact that Shigetani had "picked a person who's vulnerable," we do not agree that these statements constitute prosecutorial misconduct. These statements were based in each case on either explicit statements

made at trial or on reasonable inferences therefrom. Further, Shigetani's own use of the statements throughout the trial undermine her argument that they constitute prosecutorial misconduct. Both sides used the facts adduced at trial showing that Rooney was down on his luck and homeless as the basis for a reasonable inference that Rooney was either "vulnerable" (State) or "desperate" (Shigetani). Shigetani's own use of the same facts and substantially similar language attest to the relevance of Rooney's status as a potential basis for the motive of the parties, and, as we have previously held, "the mere mention of . . . status . . . as shown by the record may not be improper if it has a legitimate bearing on some issue in the case[.]" State v. Kiakona, 110 Hawai'i 450, 459, 134 P.3d 616, 625 (App. 2006) (quoting State v. Shabazz, 98 Hawai'i 358, 376, 48 P.3d 605, 623 (App. 2002)). Therefore, the State's statements during closing argument did not constitute prosecutorial misconduct and the circuit court did not err by failing to provide a curative instruction.

Similarly, in regards to Shigetani's argument that the State improperly shifted the burden of proof to the defense to prove "why Wayne Rooney would want to set this lady up," the circuit court did not err by failing to provide a curative instruction.

> In the case of defenses which are not affirmative, the defendant need only raise a reasonable doubt as to the defendant's guilt. The other side of the coin is that the prosecution must prove beyond a reasonable doubt facts negativing the defense. The prosecution in fact does this when the jury believes its case and disbelieves the defense.

State v. Taylor, 130 Hawai'i 196, 205-06, 307 P.3d 1142, 1151-52 (2013) (quoting HRS § 701-115(2) (1993) and its Commentary). Looking at the statement in its context in closing argument, the State merely posited Shigetani's own theory of the evidence presented. The State then argued that the facts presented at trial did not support a reasonable inference in favor of such theory and thus did not give rise to a reasonable doubt as to Shigetani's guilt. As discussed *infra*, the State adduced

sufficient evidence at trial to support its case. Accordingly, the circuit court did not err in failing to give a curative instruction for the State's characterization of Shigetani's defense during closing argument.

(2) Shigetani's second point of error contends that the circuit court plainly erred when it failed to: strike the improper statements made during cross-examination by Rooney; question the State as to the subject of the statements made by Rooney to the State as he left the courtroom; and question the jury to determine if they had heard Rooney's statements.

Generally,

[i]f the substantial rights of the defendant have been affected adversely, the error will be deemed plain error. Further, this Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (internal citations omitted) (quoting State v. Sawyer, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). As an appellate court, our

power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system--that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

Id. at 335, 141 P.3d at 982 (quoting State v. Aplaca, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

Addressing the specific issue of deliberate and unresponsive testimony by a complaining witness at trial, the Hawai'i Supreme Court has reviewed factors including the nature of the statements at issue, the promptness or lack of any curative instruction, and the strength or weakness of the evidence against the defendant to determine the extent of any prejudicial effect. See State v. Loa, 83 Hawai'i 335, 353, 926 P.2d 1258, 1276 (1996) (citing State v. Kahinu, 53 Haw. 536, 548-49, 498 P.2d 635, 643-44 (1972)). The court based its analysis on the factors for appellate review of prosecutorial misconduct. Id. at 348-49, 926 P.2d at 1271-72 (citations omitted). On this

7

issue, the Hawai'i Supreme Court noted its previous adoption of the federal standard that, "an error of constitutional proportions can be disregarded as harmless if the prosecution proves beyond a reasonable doubt that the error did not contribute to the verdict obtained." Id. (quotation marks omitted) (quoting Kahinu, 53 Haw. at 549, 498 P.2d at 644).

In this case, Rooney made two deliberate and unresponsive statements at trial and the circuit court failed to provide a curative instruction in both cases. First, at the close of questioning by the prosecution, the following exchange occurred:

> [State:] No further questions.
> [Circuit Court:] Ms. Muraoka.
> [Rooney:] Counselor, there's one other thing. This all took place in –
> [Circuit Court:] Excuse me.
> [Rooney:] –– the City and County of Honolulu ––
> [Circuit Court:] Excuse me, sir.
> [State:] Oh, excuse me.
> [Circuit Court:] There's no question posed.
> [State:] There's no question, Mr. Rooney. It's okay.
> [Rooney:] Okay.

Here, Rooney attempted to introduce testimony about the location of the incident. Shigetani acknowledges in her Opening Brief that this statement was not significantly prejudicial because the location was not a point at issue and had been sufficiently established by other witnesses. That the incident must have occurred in the City and County of Honolulu is an element of all of the offenses alleged at trial. Despite acknowledging that this remark was not prejudicial, Shigetani argues that the failure by the circuit court to provide any curative instruction constitutes plain error. However, the existence or lack of a curative instruction is not dispositive, but rather one factor to be weighed against the nature of the statements at issue and the strength or weakness of the evidence against the defendant to determine beyond a reasonable doubt whether the error contributed to the verdict obtained. See Loa, 83 Hawai'i at 353, 926 P.2d at 1276. In this case, the location of the incident was not at issue and prior testimony by several police officers and Rooney himself established the address of the incident, and its location

8

on Oahu, prior to Rooney's deliberate and unresponsive statement. Thus, we conclude that Rooney's statement did not contribute to the verdict against Shigetani and the lack of a curative instruction was harmless beyond a reasonable doubt.

The trial transcript reflects that Rooney also made a second deliberate and unresponsive statement as he left the witness stand.

> [State:] Nothing further.  No.  Thank you.
> [Circuit Court:] Ms. Muraoka?
> [Defense Counsel:] Nothing.  No further questions.
> [Circuit Court:] Okay.  Thank you.  You may step down.
> [State:] The State rests.
> (Witness Rooney speaks to Prosecutor upon exiting the courtroom.)
> [Circuit Court:] Mr. Rooney.  Mr. Rooney.  Mr. Rooney.
> (Witness Rooney exits courtroom.)
> [Circuit Court:] Ms. Kickland.
> [State:] All right.  The State rests.
> [Circuit Court:] Please approach on record, please.
> (Bench conference begun.)
> [Defense Counsel:] At this time defense would make a motion for judgment of acquittal.  I don't know if -- I mean if the State provided the -- saying like he's -- like the witness is trying to --
> [State:] That was inappropriate, Judge.
> [Circuit Court:] With respect to defendant's motion for judgment of acquittal -- I'm sorry.  I should let you respond.
> [State:] Yeah.  It was Officer Schonhardt.
> [Circuit Court:] All right.  Um, with respect to the defense motion for judgment of acquittal, considering the evidence in the light most favorable to the State, the court does find that the State has established a prima facie case such that a reasonable juror could infer -- could find guilt as charged in this case and therefore the motion -- as to each of the counts.  Therefore the motion is respectfully denied.
> [State:] Thank you.
> [Circuit Court:] Off record.
> (Off record.)
> (Bench conference concluded.)

In this case, the record shows that Rooney did make a statement to the prosecution, although the contents of the statement are unrecorded.  Despite the circuit court's attempt to either interrupt or talk over Rooney, Shigetani made no objection to Rooney's statement nor did the circuit court make any sort of curative instruction.  Shigetani argues that the circuit court's "failure to ascertain the substance of the statement and whether the jurors had heard the statement" (especially in response to the State's admission that the conduct was "inappropriate" during

the bench conference) constituted plain error and merits either mistrial, or in the alternative, remand for the circuit court to determine the contents of Rooney's statement. We reject this argument.

The Hawai'i Supreme Court has held that "omissions in trial transcripts do not mandate reversal unless the defendant can demonstrate specific prejudice." State v. Bates, 84 Hawai'i 211, 217, 933 P.2d 48, 54 (1997). The Supreme Court looked to federal decisions for its approach to specific prejudice: "a defendant must show that the failure to record and preserve the specific portion of the trial proceedings visits a hardship on him or her and prejudices his or her appeal." Id. at 216, 933 P.2d at 53. Further, in order to raise the issue on appeal, "a defendant has a duty to reconstruct, modify, or supplement the missing portions of the record, and a failure to make a reasonable attempt to do so precludes him or her from alleging reversible error." Id. at 217, 933 P.2d at 54.

In this case, the appellate record shows no attempt by Shigetani to supplement the record or otherwise utilize Hawai'i Rules of Appellate Procedure Rules 10(c) and (e) (2016) which "provide a criminal defendant with several remedies to correct or modify inaudible portions of the trial transcript." Id. at 218, 933 P.2d at 55. Shigetani also makes no allegation of specific prejudice that the failure to record and preserve the specific portion of the trial proceedings visits a hardship on her and prejudices her appeal. Accordingly, Shigetani has not demonstrated that she is entitled to either a new trial or remand.

(3) Shigetani's third point of error contends that there was insufficient evidence to support her convictions on Count 2 (Unauthorized Possession of Confidential Personal Information under HRS § 708-839.55[2]) and Count 3 (Credit Card

---

[2] HRS § 708-839.55 (2014) states in relevant part:

(1) A person commits the offense of unauthorized possession of confidential personal information if that person intentionally or

10

Theft under HRS § 708-8102(1)[3]) because there was no substantial evidence presented at trial that Shigetani knowingly possessed "confidential personal information" or a credit card belonging to Rooney. Specifically, Shigetani argues that there is no evidence that Shigetani removed the blue rubber band to open Rooney's wallet and accordingly she could not have known that the wallet contained a credit card and confidential personal information and thus could not have knowingly possessed such.

> We review the sufficiency of evidence on appeal as follows: [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (block quote format altered; citation omitted). We have previously held that, "[c]ircumstantial evidence is competent evidence and can be used to prove facts necessary to establish the commission of a crime." State v. Hoe, 122 Hawai'i 347, 349, 226 P.3d 517, 519 (App. 2010) (citation omitted).

> It is a basic rule, however, that guilt in a criminal case may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence.

---

> knowingly possesses, without authorization, any confidential personal information of another in any form, including but not limited to mail, physical documents, identification cards, or information stored in digital form.

[3] HRS § 708-8102(1) (2014) states:

> (1) A person who takes a credit card from the person, possession, custody, or control of another without the cardholder's consent or who, with knowledge that it has been so taken, receives the credit card with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder commits the offense of credit card theft. If a person has in the person's possession or under the person's control credit cards issued in the names of two or more other persons, which have been taken or obtained in violation of this subsection, it is prima facie evidence that the person knew that the credit cards had been taken or obtained without the cardholder's consent.

> No greater degree of certainty is required where a conviction is based solely on circumstantial evidence rather than on direct evidence.

State v. Bright, 64 Haw. 226, 228, 638 P.2d 330, 332 (1981) (citations omitted).

> And an inference is nothing more than "a logical and reasonable conclusion of the existence of a fact . . . from the establishment of other facts[,] from which, by the process of logic and reason, and *based upon human experience*, the existence of the assumed fact may be concluded by the trier of fact."

State v. Pone, 78 Hawai'i 262, 273, 892 P.2d 455, 466 (1995) (alteration in original) (quoting State v. Emmsley, 3 Haw. App. 459, 464-65, 652 P.2d 1148, 1153 (1982)).

> According to HRS § 708-800 (2014):

> "Confidential personal information" means information in which an individual has a significant privacy interest, including but not limited to a driver's license number, a social security number, an identifying number of a depository account, [or] a bank account number~~, a password or other information that is used for accessing information, or any other name, number, or code that is used, alone or in conjunction with other information, to confirm the identity of a person~~."

State v. Pacquing, 139 Hawai'i 302, 319, 389 P.3d 897, 914 (2016) (as excised for constitutional concerns by the Hawai'i Supreme Court). The Hawai'i Supreme Court in Pacquing noted that the list of examples of "confidential personal information" in HRS § 708-800 is not exhaustive. Id. at 319-20, 389 P.3d at 914-15. In State v. Mank, No. CAAP-16-0000342, 2017 WL 432898, at *3 (Haw. App. Jan. 31, 2017) (SDO), we held that credit card information is confidential personal information.

At trial in this case, the officers involved testified that upon their arrival at Shigetani's house they found Shigetani locked in her room. They further testified that Rooney informed them that Shigetani had taken several items from Rooney's room including a wallet, Marlboro cigarettes, some keys, and a money clip. They also testified that Shigetani invited the officers into her room and stated that they could search the room. In Shigetani's room the officers found and removed a package of Marlboro cigarettes, a money clip, and a set of keys belonging to

Rooney from the top surface of several pieces of furniture. The officers also found and removed from under a towel on Shigetani's bed a black wallet with a blue rubber band around it which matched Rooney's description of the missing item. The wallet contained Rooney's expired Hawai'i driver's license, expired New Jersey driver's license, social security card, medical cards, business cards, credit card, and Hawai'i State Library card. Rooney testified that his Virginia driver's license was never recovered.

It is a reasonable inference from this evidence, when combined with the human experience of the jury, that someone who came into possession of a wallet would have reason to know that the wallet likely contained a driver's license or ID, credit card, or other items in which an individual has a significant privacy interest. Further, Rooney testified that his valid Virginia driver's license was missing from the wallet when it was recovered. Thus there was sufficient evidence adduced at trial for the jury to find that Shigetani knowingly possessed Rooney's credit card, driver's license, and other objects which might contain confidential personal information.

Specific to Count 2, Shigetani further contends that the "intentionally or knowingly" element of HRS § 708-839.55 must also apply to the "personal confidential information" element such that the State must show Shigetani's subjective awareness that the information she possessed constituted "confidential personal information." In this case, it is a reasonable inference from her knowing, unauthorized possession of Rooney's wallet that Shigetani not only knowingly possessed Rooney's credit card, driver's license, and other items, but was also subjectively aware that the items likely in the wallet were of the sort that contain confidential personal information.

Thus there was sufficient evidence adduced at trial to support Shigetani's convictions on Count 2 (Unauthorized Possession of Confidential Personal Information under HRS § 708-839.55) and Count 3 (Credit Card Theft under HRS § 708-8102(1)).

(4) Shigetani's fourth point of error contends that her defense counsel at trial did not provide effective assistance of counsel if either of the first two contended errors raised on appeal were waived for failure of her trial counsel to properly preserve the error.

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

In conjunction with Shigetani's first assertion of ineffectiveness, she contends that the State's use of certain language in closing arguments constituted misconduct by improperly inflaming the emotions of the jurors and that the prosecution improperly shifted the burden of proof onto the defendant. While Shigetani's trial counsel failed to object to this conduct at trial, it did not possibly impair a potentially meritorious defense. First, Shigetani used substantially similar language in her own closing argument for a similar purpose, so there was no reason for defense counsel to object to the State's use of the language immediately before using the same language. Second, in closing argument the State permissibly restated Shigetani's own theory of the case and then made reasonable inferences from the facts presented at trial to argue that the theory did not create a reasonable doubt as to Shigetani's guilt.

In conjunction with Shigetani's second assertion of ineffectiveness, she alleges that the circuit court plainly erred in failing to strike or address Rooney's unsolicited comments at the close of questioning. While Shigetani's trial counsel did

14

not object to this conduct at trial, as we held *supra,* Shigetani
has also not met her duty on appeal to attempt to reconstruct,
modify, or supplement the missing portions of the record
concerning Rooney's comments.  Bates, 84 Hawai'i at 217, 933 P.2d
at 54.  In the absence of a record of the specific comments to
which Shigetani's trial counsel failed to object, Shigetani has
not shown any specific error reflecting her trial counsel's lack
of skill, judgment, or diligence.  Thus, we reject Shigetani's
claim of ineffective assistance of counsel without prejudice to a
subsequent Hawai'i Rules of Penal Procedure Rule 40 petition.

Based on the foregoing, the Judgment of Conviction and
Probation Sentence, filed April 27, 2017, in the Circuit Court of
the First Circuit is AFFIRMED.

DATED:  Honolulu, Hawai'i, March 28, 2019.

On the briefs:

Thomas Waters
for Defendant-Appellant.

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

15